1   BRYAN WILSON (CA SBN 138842)
    BWilson@mofo.com
2   ALESSA HWANG (CA SBN 286872)
    AHwang@mofo.com
3   MORRISON & FOERSTER LLP
    755 Page Mill Road
4   Palo Alto, California 94304-1018
    Telephone: 650.813.5600
5   Facsimile: 650.494.0792

6   BITA RAHEBI (CA SBN 209351)
    BRahebi@mofo.com
7   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 600
8   Los Angeles, California 90017-3543
    Telephone: 213.892.5200
9   Facsimile: 213.892.5454

10  Attorneys for Defendant YUNEEC
    INTERNATIONAL CO., LTD.
11

12                  UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14

15  | SZ DJI Technology Co., Ltd. and DJI | Case No. 5:16-cv-00595-BRO(KKx) |
    Europe B.V.,

16                                         **YUNEEC INTERNATIONAL'S**
                                           **MEMORANDUM OF POINTS AND**
17          Plaintiffs,                    **AUTHORITIES IN SUPPOT OF**
                                           **MOTION TO DISMISS UNDER**
18          v.                             **FEDERAL RULE OF CIVIL**
                                           **PROCEDURE 12(B)(6)**
19  Yuneec International Co., Ltd. and
    Yuneec USA, Inc.,                      Date: October 3, 2016
20                                         Time: 1:30 p.m.
            Defendants.                    Courtroom: 14
21

22  Yuneec USA, Inc.,                      Judge: Hon. Beverly Reid O'Connell

23          Counter-Claimant,

24          v.

25  SZ DJI Technology Co., Ltd. and DJI
    Europe B.V.,
26
            Counter-Defendants.
27

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND SUMMARY ................................................................1

II.   STATEMENT OF FACTS ...............................................................................2

    A.   DJI's Complaint .................................................................2

    B.   The '506 Patent .................................................................2

III.  ARGUMENT ....................................................................................................7

    A.   It Is Appropriate To Decide Patent Eligibility At The Pleading Stage ................................................................7

    B.   Abstract Ideas Are Not Eligible For Patent Protection ........................8

    C.   The '506 Patent Claims Are Not Eligible For Patent Protection ..........9

        1.   Step 1: The Asserted Claims of the '506 Patent Are Directed to an Abstract Idea .................................................9

        2.   Step 2: The Asserted Claims of the '506 Patent Do Not Recite an Inventive Concept ..........................................11

IV.  CONCLUSION ..............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014), 189 L. Ed. 2d 296 (2014)...........................................8, 9

*Apollo Fin., LLC v. Cisco Sys., Inc.*,
  No. 2:15-CV-9696, 2016 WL 3234518 (C.D. Cal. June 7, 2016) .......................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................7

*Bilski v. Kappos*,
  561 U.S. 593 (2010)........................................................................................7, 8

*Blue Spike, LLC v. Google, Inc.*,
  No. 14 cv 01650, 2015 WL 5260506 (N.D. Cal. Sept. 8, 2015) ..........................8

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ........................................................................14

*California Institute of Technology v. Hughes Communications, Inc.*,
  59 F. Supp. 3d 974 (C.D. Cal. 2014) ................................................................12

*CMG Fin. Servs. Inc. v. Pac. Trust Bank, FSB*,
  50 F. Supp. 3d 1306 ..........................................................................................13

*Coinstar, Inc. v. CoinBank Automated Sys., Inc.*,
  998 F. Supp. 1109 (N.D. Cal. 1999)...................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014), *cert. denied*,
  136 S. Ct. 119, 193 L. Ed. 2d 208 (2015)................................................9, 11, 13

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ........................................................................11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...................................................................11, 14

*Eclipse IP LLC v. McKinley Equip. Corp.*,
  No. SACV 14-154-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014).........8, 15

*Electric Power Group, LLC v. Alstom, S.A.*,
  No. 2015-1778, 2016 WL 4073318 (Fed. Cir. Aug. 1, 2016) ......................14, 15

*Enfish, LLC. v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ...................................................................9, 10

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. May 17, 2016) ........................................................9, 13

*MacroPoint, LLC v. FourKites, Inc.*,
  No. 1:15 CV 1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015) ...................10

*Mayo Collaborative Servs. v. Prometheus Labs.,Inc.*,
  132 S. Ct. 1289 (2012), 182 L. ed. 2d 321 (2012)..............................................8

*Open Text S.A. v. Box, Inc.*,
  78 F. Supp. 3d 1043 ...........................................................................................9

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
  No. 2016-1004, 2016 WL 4271975 (Fed. Cir. Aug. 15, 2016) ..........................15

*Thales Visionix, Inc. v. United States*,
  122 Fed. Cl. 245 (2015) ....................................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ............................................................................7

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
  793 F.3d 1306 (Fed. Cir. 2015) ........................................................................11

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
  100 F. Supp.3d 405 ...........................................................................................10

*Wolf v. Capstone Photography, Inc.*,
  No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) ...................7

## STATUTES AND OTHER AUTHORITIES

35 U.S.C. § 101 .................................................................................................*passim*

Fed. R. Civ. P. 8(b)(3)...............................................................................................1

Fed. R. Civ. P. 12(a)(4)..............................................................................................1

Fed. R. Civ. P. 12(b)(6)..............................................................................................7

Defendant Yuneec International Co. Ltd. ("Yuneec International") moves to dismiss Plaintiffs' first cause of action in their complaint as to United States Patent No. 9,164,506 ("the '506 Patent") for failure to state a claim under which relief can be granted.[1]  The asserted claims of the '506 Patent are invalid because they are directed to ineligible subject matter under 35 U.S.C. § 101.

## I.    INTRODUCTION AND SUMMARY

The '506 Patent is directed to tracking a target by an unmanned aerial vehicle ("UAV").  The patent itself recognizes that target tracking using unmanned aerial vehicles (UAVs) has long been performed for purposes such as surveillance, reconnaissance, and exploration.  Traditionally, a person would visually track a target with his or her eyes, and direct a UAV to follow it using a remote-controlled device.

The patent takes the everyday concept of target tracking and purports to make it automatic or semi-automatic on UAVs with the help of generic computer components.  These components receive the target data, process it, and send signals to the UAV to adjust itself based on fundamental laws of nature such as angles and velocities.  The patent does not claim improved methods for tracking, does not invent any new tracking software or hardware, and does not describe any specialized UAV-specific technology.  The asserted claims of the '506 Patent—which recite only abstract ideas and are devoid of inventive concept—are therefore invalid under Section 101.

---

[1] Under Fed. R. Civ. P. 12(a)(4), Yuneec International understands that it may bring this Rule 12(b)(6) Motion to Dismiss in lieu of an Answer, and does not therefore need to respond to the other allegations in the Complaint or file a Counterclaim at this time.  To the extent any response is needed at this time, Yuneec International hereby generally denies all allegations of the Complaint (*see* Fed. R. Civ. P. 8(b)(3)) to avoid any perceived waiver, while at the same time reserving the right to file an amended responsive pleading at an appropriate juncture in which it will specifically deny certain allegations and assert certain additional defenses as well as counterclaims.

## II. STATEMENT OF FACTS

### A. DJI's Complaint

On April 1, 2016, Plaintiff SZ DJI Technology Co., Ltd. and DJI Europe B.V. (collectively, "DJI") filed a complaint alleging that Yuneec International and Yuneec USA, Inc. infringe the '506 Patent as well as an additional patent. (ECF No. 1.) The '506 Patent is attached as an exhibit to the Complaint and is therefore properly considered under a Rule 12(b)(6) motion.

Exhibit 3 to the Complaint is entitled "Infringement Claim Chart for U.S. Patent No. 9,164,506" and identifies two asserted claims: claims 1 and 6. (ECF No. 1, Ex. 3 at 136.)

### B. The '506 Patent

The '506 Patent does not purport to invent target tracking on UAVs. In fact, as recognized in the '506 Patent, aerial vehicles, such as unmanned aerial vehicles (UAVs), have long been used for performing tasks such as surveillance, reconnaissance, and exploration tasks for military and civilian applications. ('506 Patent, 1:12-15.)

The '506 Patent describes automating or semi-automating the process of manual target tracking. ('506 Patent, Abstract.) The idea of the claimed invention is for a UAV to automatically or semi-automatically track a target by maintaining the same relative position with the target as it is moving. (*See e.g.*,'506 Patent, 24:16-34.) To achieve this, a user inputs "target information" into a control terminal. The computer component on the UAV (e.g., the processor) receives this target information and detects how far a target has deviated from its former position. As best can be understood, the processor then determines how to adjust the UAV and/or the imaging device (e.g., a camera) to correct for any deviations, based on mathematical principles and laws of nature such as angles and speed. (*See e.g.*, '506 Patent, 24:16-63.) The claims do not include anything about how this determination is made.

The patent's illustrations show that the purported invention is made up of conventional components, used in a conventional way.  Figure 1shows a moveable object (101), which can be a UAV, attached by carrier (102) to a payload (104).  The payload may be a camera or a camcorder.  ('506 Patent, 12:8-10.)  A control terminal (112), which can be a tablet or a smartphone, communicates with the movable object to control the movable object, the carrier, and/or the payload as it tracks the target (116).  ('506 Patent, 12:42-59.)  There is nothing new about any of this.



FIG. 1

In another example, Figure 8 is a non-substantive depiction of the simple input and output process of receiving target information, controlling the movable object using this information, and adjusting it to track the target.

1
2
3
4
5
6
7
8



FIG. 8

9    In another example, Figure 16 is an even less substantive depiction of the

10   connections between the generic components, i.e., the sensing module (1602)

11   connects to the processing unit (1604), which connects to the computer-readable

12   medium (1606), which connects to the control module (1608), which connects to

13   the communication module (1610).

14
15
16
17
18
19
20
21



22
23
24
25   FIG. 16
26
27
28

According to its complaint and attached claim charts, DJI asserts that Yuneec infringes independent claim 1 and dependent claim 6.[2]  Claim 1 recites:

> 1. A system for controlling an unmanned aerial vehicle (UAV), comprising:
>
> one or more receivers, individually or collectively, configured to receive from a remote user (1) one or more navigation commands to move the UAV along a flight path, and (2) target information of a target to be tracked by an imaging device on the UAV; and
>
> one or more processors, individually or collectively, configured to track the target according to the target information by automatically adjusting at least one of the UAV or the imaging device while the UAV moves along the flight path according to the one or more navigation commands from the remote user, wherein the one or more processors, individually or collectively, make a determination to adjust 1) the UAV, 2) the imaging device, or 3) both the UAV and the imaging device, wherein said determination is dependent upon a) number of rotational axes of the imaging device and orientation of said rotational axes relative to the UAV; b) a navigation path of the UAV; or c) a maximum angular speed allowable for the UAV or the imaging device.

This simply describes using these conventional components to collect data about a target.  The claim refers to receivers configured to receive information, but says nothing about what the configuration should be or how it should be done.  The claim then refers to processors that are configured to track the target by making a determination to adjust the UAV, the imaging device, or both.  The determination is dependent on mathematical principles.  However, nothing in the claim provides any details about how the processors should be configured, or how the determination should be made.

The specification does not fill in these details.  It broadly discusses general, well-known principles related to movement and orientation, such as changing the

---

[2] To the extent that DJI may eventually attempt to assert other claims, it is appropriate to treat claims 1 and 6 as representative claims because they are the claims that DJI identified in its complaint and claim charts.

linear or angular velocity, zoom, or focus.  (*See, e.g.*, '506 Patent at 24:45-25:18.)
The specification also generally discusses the  types of calculations that can be
made to determine appropriate velocities for the UAV and/or the imaging device
based on the position of the target.  (*See, e.g.*, '506 Patent, 27:17-31:61.)  These
calculations are not part of the claim.  Claim 6 adds only the additional limitation
"wherein the UAV comprises a plurality of rotors configured to generate lift for the
UAV," but says nothing about how the system of claim 6 is in any way
meaningfully different from the system of claim 1.

The specification also confirms that the computer elements referred to in the
claims are entirely conventional:

- a receiver that can be a proximity sensor or a camera ('506 Patent, 25:38-41);

- a target that can be identified by "[a]ny suitable image recognition or identification techniques" ('506 Patent, 24:1-15);

- a pre-processing unit that can include "any hardware, software, or a combination thereof" ('506 Patent, 19:22-26);

- a processor that can be a "programmable processor (e.g., a central processing unit (CPU))" ('506 Patent, 48:7-12);

- a control terminal that can be a "a handheld or wearable device" such as "a smartphone, tablet, laptop, computer, glasses, gloves, helmet, microphone, or suitable combinations thereof" ('506 Patent, 16:42-51); and

- a communication module that can communicate via any one of well-known communication networks, including local area networks (LAN), wide area networks (WAN), infrared, radio, WiFi, point-to-point (P2P) networks, telecommunication networks, or cloud communication. ('506 Patent, 48:44-63.)

The '506 Patent does not even purport to claim anything unique to UAVs.  It

6

says the claimed systems and methods can be applied to a "wide variety" of movable objects including a fixed-wing aircraft, a rotary-wing aircraft, a ship, a submarine, a motor vehicle such as a car, truck, bus, van, motorcycle, or a spaceplane or probe: ('506 Patent, 40:47-67.)  The claims, of course, say nothing about any of these other objects.

## III.   ARGUMENT

The '506 Patent claims only an abstract idea, without an inventive concept. It is therefore invalid under Section 101 of the Patent Act because it does not claim patent-eligible subject matter.

### A.   It Is Appropriate To Decide Patent Eligibility At The Pleading Stage

Under Fed. R. Civ. Proc. 12(b)(6) the Court should dismiss a complaint for failure to state a claim upon which relief can be granted when the complaint does not plead a cognizable legal theory,  or  does not plead sufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Patentability under 35 U.S.C. § 101 (the Patent Act) is a threshold determination on a purely legal issue.  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). It is appropriate to decide Section 101 issues at the pleading stage:

> From a practical perspective, addressing section 101 at the outset of litigation will have a number of salutary effects. First, it will conserve scarce judicial resources. Failure to recite statutory subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014).  Courts in this District have invalidated patent claims on Rule 12 motions prior to claim construction.  For example, in *Wolf v. Capstone Photography, Inc.*, this Court ordered a 12(c) dismissal on § 101 grounds ("the basic character of the claimed subject matter is readily ascertainable from the face of the patent, and that plaintiffs' arguments for delaying the § 101 inquiry are unpersuasive."), No. 2:13-

7

1   CV-09573, 2014 WL 7639820, at *6, *10 (C.D. Cal. Oct. 28, 2014) (Snyder, C.)

2   (quotations omitted); *see also Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV

3   14-154-GW (AJWx), 2014 WL 4407592, at *7-9 (C.D. Cal. Sept. 4, 2014)

4   (granting motion to dismiss).

5           **B.    Abstract Ideas Are Not Eligible For Patent Protection.**

6           Section 101 of the Patent Act defines patent-eligible subject matter as "any

7   new and useful process, machine, manufacture, or composition of matter, or any

8   new and useful improvement thereof." 35 U.S.C. § 101.  The Supreme Court has

9   long recognized that abstract ideas are not eligible for patent protection.  *See Alice*

10  *Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014), 189 L. Ed. 2d 296 (2014)

11  (patent claims directed toward abstract ideas implemented using conventional

12  computer technology are invalid for lack of patentable subject matter under § 101);

13  *see also Mayo Collaborative Servs. v. Prometheus Labs.,Inc.*, 132 S. Ct. 1289, 1293

14  (2012), 182 L. Ed. 2d 321 (2012); *Bilski*, 561 U.S. at 653 ("Phenomena of nature…,

15  mental processes, and abstract intellectual concepts are not patentable.").

16          To determine if a patent claim is ineligible under §101, the Supreme Court

17  has established a two-step test.  *Alice*, 134 S. Ct. at 2354.

18          Step 1.  The Court must first determine whether the claims at issue are

19  directed to a patent-ineligible concept.  *Alice*, 134 S. Ct. at 2355.  Claims that are

20  "drawn to an abstract idea" are ineligible.  *Id.* at 2353.  "Identifying whether a claim

21  is 'directed to an abstract idea' under step one of the *Alice* test requires courts to

22  examine the purpose of a challenged claim."  *Apollo Fin., LLC v. Cisco Sys., Inc.*,

23  No. 2:15-CV-9696 RSWL (PJWX), 2016 WL 3234518, at *4 (C.D. Cal. June 7,

24  2016); *see Blue Spike, LLC v. Google, Inc.*, No. 14 cv 01650, 2015 WL 5260506, at

25  *4 (N.D. Cal. Sept. 8, 2015) ("To determine whether patent claims are directed to

26  an abstract idea, the Court must 'distill[] the gist of the claim[s].'").  If the focus of

27  the claims is "on a process that qualifies as an 'abstract idea' for which computers

28  are invoked merely as a tool," the claim must be subjected to step two of the *Alice*

1  test.  *Enfish, LLC. v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

2  <u>Step 2</u>.  If the claims are directed to a patent-ineligible concept, the Court

3  must then determine whether there is an "inventive concept" that is "sufficient to

4  ensure that the patent in practice amounts to significantly more than a patent upon

5  the [ineligible concept] itself."  *Alice*, 134 S. Ct. at 2355.  Transformation of a

6  patent-ineligible abstract idea "into a patent-eligible application requires 'more than

7  simply stat[ing] the [abstract idea] while adding the words 'apply it.'"  *Id.* at 2357.

8  The Supreme Court has made clear that merely taking an abstract idea and

9  adding steps (or breaking the idea into steps) involving "well-understood,"

10 "routine," or "conventional" activity does nothing to add an inventive concept to an

11 abstract idea.  *Alice*, 134 S. Ct. at 2359 (claims to abstract idea invalid despite

12 reciting computer components); *Content Extraction & Transmission LLC v. Wells*

13 *Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014), *cert. denied*,

14 136 S. Ct. 119, 193 L. Ed. 2d 208 (2015) (claims to abstract idea invalid despite

15 requirement of scanner and computer).  Additionally, "limiting the use of an

16 abstract idea to a 'particular technological environment [,]'" such as "the mere

17 recitation of a generic computer[,] cannot transform a patent-ineligible abstract idea

18 into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2358; *see also In re TLI*

19 *Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. May 17, 2016) (holding

20 concrete, tangible components that "merely provide a generic environment in which

21 to carry out an abstract idea" did not make the patent valid).

**C.     The '506 Patent Claims Are Not Eligible For Patent Protection.**

**1.     Step 1: The Asserted Claims of the '506 Patent Are Directed to an Abstract Idea**

As part of the first step of the Section 101 inquiry, "the Court distills the gist

of the claim," in other words, whether the "character" of the claims as a whole is

directed to an abstract idea.  *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1046-

1   47 (N.D. Cal. 2015); *Enfish*, 822 F.3d at 1335-36.

2        There can be no real dispute that the gist of the '506 Patent is directed to an
3   abstract idea—automatic tracking of a target.  ('506 Patent, 1:19-31.)  The claim
4   language makes this clear.  The purported invention is a system for controlling a
5   UAV, using receivers and processors that are configured in some general but
6   unstated way, and making a determination according to some unspecified method.
7   The claims cover, at best, an abstract system without providing any details.

8        Moreover, tracking and monitoring are everyday concepts that courts have
9   held to be abstract.  *See MacroPoint, LLC v. FourKites, Inc.*, No. 1:15 CV 1002,
10  2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015) (claims directed toward
11  tracking freight abstract since "the claim discloses nothing more than a process for
12  tracking freight, including monitoring, locating, and communicating regarding the
13  location of the freight," and specifically,"[t]hese ideas are all abstract in and of
14  themselves."); *see also Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
15  100 F. Supp.3d 405, 413 (D.N.J. 2015) (claims directed toward an "abstract idea:
16  monitoring locations, movement, and load status of shipping containers within a
17  container-receiving yard, and storing, reporting, and communicating this
18  information in various forms through generic computer functions.").

19       Similarly, the Court of Federal Claims recently held in a case involving
20  motion tracking using generic sensors that tracking is an abstract concept.  In
21  *Thales Visionix, Inc. v. United States*, 122 Fed. Cl. 245, 252 (2015), the court found
22  as abstract the idea of "tracking two moving objects [the pilot and the target]"
23  which incorporated laws of nature governing motion.  The asserted patent, entitled
24  "Motion Tracking," covered a helmet display that automatically tracked targets in a
25  pilot's vision.  *Id.* at 248.  The patent claimed a system with (1) two tracking
26  sensors, one mounted on the tracked object and the other on a moving reference
27  frame, and (2) a receiver "configured to determine an orientation of the object
28  relative to the moving reference frame."  *Id.* at 249.  Based on mathematical

1  equations (related to angular speed and relative rotational positioning), the positions

2  of the targets would automatically adjust as the pilot moved.  *Id.*  The Court

3  dismissed the case on a motion for judgment on the pleadings because the patent

4  covered ineligible subject matter.  *Id.* at 257.

5         The purported inventions of the '506 Patent are similarly abstract.  They are

6  simply directed to the *automation* of motion tracking a process that can be

7  performed manually.  ('506 Patent, 1:35-40; 11:19-22; 11:33-36.)  Tracking can be

8  done as rudimentarily as with the naked eye, and the Federal Circuit has affirmed

9  that processes that can be performed manually are abstract under § 101.  *See*

10 *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371-72

11 (Fed. Cir. 2011) (method of verifying validity of credit card transactions over the

12 Internet held unpatentable, as it could be performed manually); *Versata Dev. Grp.,*

13 *Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015) (noting idea was patent

14 ineligible when it "could be performed in the human mind or by a human using a

15 pen and paper."); *Content Extraction*, 776 F.3d at 1347 (claims unpatentable since

16 "humans have always performed these functions" of "data collection, recognition,

17 and storage," which are "indisputably well-known."). Nothing in the claims is

18 anything other than an abstract idea.

19         **2.**      **Step 2: The Asserted Claims of the '506 Patent Do Not**

20                 **Recite an Inventive Concept**

21        For patent claims to have an inventive concept, they need to address a

22 specific technological problem and provide a technological solution that is tied to

23 particular computer hardware or software solutions.  For example, in *DDR*

24 *Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the patent

25 claims addressed a problem specific to the Internet—in particular, the fact that

26 when a user clicks on an advertisement on a certain website, conventional function

27 would send the user to a third party merchant's website and thus away from the

28 original website.  *Id.* at 1257.  The patent claims addressed this problem by creating

1   a "hybrid web page," according to a specific method, that displays the third party's

2   content within the original website.  *Id.*  The court found this to be a sufficiently

3   inventive concept because the claims did not "broadly and generically claim 'use of

4   the internet' to perform an abstract business practice" – rather, the claims provided

5   "a result that overrides the routine and conventional sequence of events ordinarily

6   triggered by the click of a hyperlink." *Id.* at 1258.

7       Similarly, in *California Institute of Technology v. Hughes Communications,*

8   *Inc.*, 59 F. Supp. 3d 974 (C.D. Cal. 2014), this court upheld patent claims directed

9   to directed to correcting corrupt stored data with an error correction code called

10  irregular repeat and accumulate code.  *Id.* at 1000-01.  This method of error

11  correction applies unconventional steps to solving the problem of corrupted data,

12  including "irregular repetition and the use of a prior parity bit to calculate the next

13  parity bit." *Id.* at 998.  Critically, the patent claims covered *only* this approach to

14  error correction, thus ensuring that upholding the patent would not "preempt the

15  field of error correction" or "preclude the use of other effective error correction

16  techniques." *Id.* at 994.

17      There is nothing like this in the '506 patent.  It does not purport to invent

18  UAVs, or tracking targets, or tracking targets using UAVs, or any specialized

19  computer hardware related to UAV tracking.  It does not purport to invent any of

20  the recited computer components: processors are not new, receivers are not new,

21  sensors are not new, controllers are not new, imaging devices are not new.  The

22  only thing the patent purports to do is to automate the long-known process of target

23  tracking on drones.  ('506 Patent, 11:37-40.)  But it does so without including

24  anything in the claims about how this may be done.  In that respect, the '506 patent

25  seeks to do exactly what the court in *California Institute of Technology* said was

26  improper—namely, preempting any method of automating target tracking on

27  drones.  *See Cal. Inst. of Tech.*, 59 F. Supp. 3d at 994.

28      The mere automation of a traditionally manual process, or use of updated

technology to automate a process, is not inventive.  *See Content Extraction*, 776 F.3d at 1347 (claims reciting the steps of "(1) collecting data, (2) recognizing certain data within the collected data set, and (3) storing that recognized data in a memory" were unpatentable since "humans have always performed these functions" of "data collection, recognition, and storage," which are "indisputably well-known.").

The '506 Patent's claimed invention describes generic systems and methods for receiving and processing target information and adjusting a UAV to track the target.  But this was traditionally done by a user manually tracking the target with his or her eyes and then controlling the UAV with a remote control.  ('506 Patent, 1:20-31.)  According to the '506 Patent, this same concept is achieved via basic input and output functions performed using generic and conventional computer components.  Where "the recited physical components behave exactly as expected according to their ordinary use," there is no inventive concept.  *In re TLI*, 823 F.3d at 615; *see CMG Fin. Servs. Inc. v. Pac. Trust Bank, FSB*, 50 F. Supp. 3d 1306, 1320-21 (C.D. Cal. 2014) ("None of the claims here actually describe any particular software, how it is designed, who designed it, or how it achieves the identified tasks. . . .  [O]ne cannot merely claim that an abstract idea is tied to a machine by stating that the abstract steps will be performed via software instructions.").

Claim 1 fails to recite any element, individually or as an ordered combination, that can rescue it from patent ineligibility under § 101.  Claim 6, which merely recites the UAV compromises a plurality of rotors configured to generate lift for the UAV.  There is no disclosure or details of this supposed configuration and likewise no inventive concept is disclosed.

The specification confirms that all of the computer components recited in the '506 Patent are conventional everyday components performing their expected functions:

- The **imaging device** can be a camera or a camcorder.  ('506 Patent, 12:8-12.)

- The **receivers** can be a proximity sensor or a GPS sensor or a camera. ('506 Patent, 25:38-41.)

- The **processor** can be a central processing unit (CPU) ('506 Patent, 48:7-10.).  The pre-processing unit can include "any hardware, software". ('506 Patent, 19:22-26.)

- The **communication module** can use infrared, radio, WiFi, or point-to-point networks.  ('506 Patent, 44-63.)

- The **control terminal** can be a smartphone, tablet, laptop, computer, glasses, gloves, helmet, or a microphone.  ('506 Patent, 16:42-51.)

There is no inventive concept in a recitation of generic computer components used to receive and process data in their expected capacities.  In fact, as summarized in *DDR Holdings*, both the Supreme Court in *Alice* and the Federal Circuit many times since have found there to be no inventive concept where an abstract idea is simply applied to generic computer hardware.  *DDR Holdings*, 773 F.3d at 1256 (summarizing cases where no inventive concept was found because the "patent-ineligible abstract ideas [were] plainly identifiable and divisible from the generic computer limitations recited by the remainder of the claim"); *see also Electric Power Group, LLC v. Alstom, S.A.*, No. 2015-1778, 2016 WL 4073318, at *5 (Fed. Cir. Aug. 1, 2016) (no inventive concept when "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (no inventive concept in case involving "generic" computer functionality; "[t]hat a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

The prosecution history of the '506 Patent likewise confirms there is no

inventive concept.[3]  During prosecution, the Examiner rejected all of the claims of the '506 Patent as anticipated and/or obvious.  (Request for Judicial Notice ("RJN"), Ex. A (1/5/15 Non-Final Rejection at p. 3-18).)  Claim 1 was allowed only after the Applicant amended the claim to add a "wherein" limitation to require making a determination to adjust the UAV and/or imaging device in some unspecified way, based on known mathematical principles related to motion and orientation.[4]  (RJN, Ex. B (5/7/15 Supplemental Amendment, Response to Non-Final Office Action at 9-10).)  Although the issuance of the '506 Patent required adding this limitation, the additional language has no substance or inventive concept.  It simply states that a determination is made based on certain factors, but it does not say how the factors should be applied, or even how they relate to making the required determination.  The "determination" limitation is still abstract, and still lacks an inventive concept.  *See TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, No. 2016-1004, 2016 WL 4271975, at *2 (Fed. Cir. Aug. 15, 2016) (affirming patent-ineligibility of patent that "recites the *what* of the invention, but none of the *how* that is necessary to turn the abstract idea into a patent-eligible invention."); *Electric Power Group*, 2016 WL 4073318, at *1 (claims patent-ineligible when they stated a function in general terms, without limiting them to technical means for

---

[3] The prosecution history is a "public record," and the Court may properly take judicial notice of it when considering a Rule 12 motion under Federal Rule of Evidence 201.  *See e.g. Coinstar,Inc. v. CoinBank Automated Sys., Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1999) (taking judicial notice of prosecution history); *Eclipse*, 2014 WL 4407592, at *7-9 (court may consider on a 12(b)(6) motion matters which are properly judicially noticeable).

[4] The following language was added: "wherein the one or more processors, individually or collectively, make a determination to adjust 1) the UAV, 2) the imaging device, or 3) both the UAV and the imaging device, wherein said determination is dependent upon a) number of rotational axes of the imaging device and orientation of said rotational axes relative to the UAV; b) a navigation path of the UAX; b) a navigation path of the UAV; or c) a maximum angular speed allowable for the UAV or the imaging device."  (RJN, Ex. B (5/7/16 Supplemental Amendment at 2).)

performing the functions that are arguably an advance over conventional computer and network technology.)

## IV.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court find the '506 Patent invalid under 35 U.S.C. § 101 and dismiss DJI's first cause of action in its complaint with prejudice.


Dated: August 29, 2016                    Respectfully submitted,


                                   By: */s/ Bryan Wilson*
                                        Bryan Wilson

                                        BRYAN WILSON
                                        (CA SBN 138842)
                                        BWilson@mofo.com
                                        ALESSA HWANG
                                        (CA SBN 286872)
                                        AHwang@mofo.com
                                        MORRISON & FOERSTER LLP
                                        755 Page Mill Road
                                        Palo Alto, California  94304-1018
                                        Telephone:   650.813.5600
                                        Facsimile:   650.494.0792

                                        BITA RAHEBI
                                        (CA SBN 209351)
                                        BRahebi@mofo.com
                                        MORRISON & FOERSTER LLP
                                        707 Wilshire Boulevard, Suite 600
                                        Los Angeles, California  90017-3543
                                        Telephone:   213.892.5200
                                        Facsimile:   213.892.5454

                                        Attorneys for Defendant YUNEEC
                                        INTERNATIONAL CO., LTD.